(No. 22394.—
Jesse C. Harrison *et al.* Appellees, *vs.* Joe Ault *et al.*
Appellants.

*Opinion filed December 20, 1934—Rehearing denied Feb. 6, 1935.*

Kasserman & Kasserman, and Milo D. Yelvington,
for appellants.

Albert E. Isley, for appellees.

Mr. Justice Stone delivered the opinion of the court:

This is an action to enforce stockholders' liability under
section 6 of the Banking act. (Smith's Stat. 1933, p. 198.)
This section provides that "every stockholder in any bank
or banking association organized under the provisions of
this act shall be individually responsible and liable to its
creditors over and above the amount of stock by him or
her held, to an amount equal to his or her respective shares
so held, for all its liabilities accruing while he or she re-
mains such stockholder." Appellees filed their bill in the
circuit court of Jasper county seeking to establish the statu-

tory liability of appellants as stockholders in the State Bank of Yale.

The case was tried on the following stipulation of fact: "It is stipulated that on July 19, 1926, James G. Cramer deposited in the State Bank of Yale $1000, receiving therefor a time certificate of deposit payable to his order, with four per cent interest, due six months after date, upon return of said certificate properly indorsed; that on July 11, 1927, said Cramer surrendered said certificate to said bank upon receipt from said bank of the interest and $100 in cash and another similar certificate of that date for $900; that said bank on said date received the certificate dated July 19, 1926, and stamped same 'Paid,' and entered the fact that it was paid upon its certificate of deposit ledger kept for that purpose; that in addition to said ledger said bank also kept its cash book and upon the issuance of any certificate of deposit it was entered therein as a debit of the bank, and upon the presentation of any certificate of deposit that fact was likewise entered and shown upon such cash book as a credit for the amount indicated by such certificate; that the various certificates of deposit issued by said bank to Mr. Cramer were entered in this manner; that on July 23, 1928, said Cramer surrendered certificate dated July 11, 1927, and received therefor the accrued interest and $150 in cash and another certificate for $750 dated July 23, 1928; that on June 26, 1929, the certificate dated July 23, 1928, was presented to said bank and canceled, interest paid to Cramer and another certificate for $750 issued to him; that on July 5, 1930, said certificate dated June 26, 1929, was presented to said bank and said Cramer received the interest thereon, surrendered said certificate, which was marked 'Paid,' and received another certificate issued to him for $750 dated July 5, 1930, which said certificate was in possession of said Cramer, an outstanding obligation of said bank, when closed by order of Auditor on January 3, 1931; that all other certificates of

deposit in said bank were handled in same manner as said Cramer certificates; that the question of law presented for determination is whether the issuance of other certificates of deposit in the manner outlined by the Cramer certificate operated as payments by the bank of its indebtedness, as evidenced by the surrendered certificates executed by the bank and which were returned by the holders to the bank and by the bank stamped 'Paid' and other certificates of deposit issued by the bank and accepted by the holders, and whether or not such transactions created new liabilities against the stockholders holding the stock of said bank at the time of such transaction and released the stockholders from said liability who had prior thereto sold their stock."

The chancellor held that the indebtedness on the certificate of deposit accrued when the original deposit was made; that the issuance of subsequent certificates to said depositor was not a payment of the original indebtedness, and that the stockholders of the bank at the time the original certificate of deposit was issued, and all other stockholders subsequent to that date, are liable to the extent of the amount of their stock, and decreed accordingly. The Appellate Court affirmed the decree and certified the question of importance to be the liability of stockholders of closed banks on renewed certificates of deposit, where such stockholders, prior to renewal of the certificate of deposit, had disposed of their stock.

Appellees' counsel argues that the issuance of a certificate of deposit is, in effect, the giving of a promissory note of the bank representing a loan, and under a well established rule of law the giving of a renewal note does not extinguish the debt in the absence of an express agreement that it so do. He says that there is nothing to show that Cramer agreed to release the former stockholders, and so the stockholders who were such when the original certificate of deposit was issued remained liable though new certificates of deposit were issued after they had sold their

stock. It may be observed as to the latter premise of counsel's argument, that Cramer apparently made no inquiry as to any change in the stockholders but took the certificate of deposit from the bank without such inquiry.

Appellants, on the other hand, argue that the surrender of the certificate of deposit, the receipt of interest due thereon, the acceptance of a new certificate and a new promise that interest be paid as consideration for the new certificate, constituted a new deposit and the obligations created by the first certificate were fully satisfied. They cite *McCormick* v. *Hopkins*, 287 Ill. 66. Appellees reply that the question presented here was not decided in the *McCormick case;* that the only question before the court in that case was the liability of the surety company under the conditions of its bond, and that this court there held the surety company liable on the theory that the issuance of a certificate of deposit was a contract evidencing a new deposit, for which the surety company was liable. This construction of the *McCormick case* was also given by the Appellate Court. We are unable to take that view of the *McCormick case.* The issue there presented and decided was whether the bank, by issuing a new certificate of deposit, merely extended a liability existing at the time the surety bond was given and not covered thereby, or created a new liability on the part of the bank which came within the surety's contract. The issue here is whether the surrender and cancellation of the certificates of deposit marked "Paid" and the issuance of new certificates amounted merely to a continuation of a contractual liability of the bank created when the first certificate of deposit was issued to Cramer on July 19, 1926, less the $100 and $150 payments to him, or whether in each instance the surrender and cancellation of the previous certificate and the issuance of a new one created a new contractual relation between Cramer and the bank releasing the original indebtedness. As we view this issue, it is the same here

as in the *McCormick case*. In that case the treasurer of the Sanitary District of Chicago on the third day of June, 1913, deposited in the LaSalle State Trust and Savings Bank the sum of $50,000 and received a time certificate of deposit therefor payable September 3, 1913. On the date of its maturity the bank paid to the treasurer $375 as interest, the certificate was surrendered and canceled and another certificate, identical except as to date of issue and maturity, was issued. This again occurred on December 3, 1913, on March 3, 1914, and on June 11, 1914. On June 2, 1914, the Illinois Surety Company became surety on a bond of the bank as such depository of sanitary district funds. On June 12, 1914, the bank closed, and the surety company's receiver defended a suit on the bond on the ground the treasurer did not deposit the $50,000 on June 11, 1914, as indicated by the certificate of deposit, but the deposit was, in fact, made on June 3, 1913, and the surety company was not liable for debts incurred before the date of its contract. It was held that in each instance when the certificate of deposit matured and the treasurer presented it to the bank and received the interest and a new certificate of deposit a new contract of deposit was made. "The old certificate was taken up and canceled, the new certificate was issued, and the entries on the books of the bank showed these transactions. The contract evidenced by the old certificate had then been performed. A new deposit had been made." It is there pointed out that a deposit of a time certificate is not a loan of the bank, and the distinction between such a loan as it is known and established in banking custom, and a deposit on time certificate, is set out. This court there cites with approval *State* v. *Shove,* 96 Wis. 1, 70 N. W. 312. In that case an official of a bank was charged with receiving deposits knowing the bank to be insolvent. A patron of the bank had presented a matured certificate of deposit in the sum of $200 upon which interest was due. This cer-

tificate was surrendered and canceled and a new time certificate for $300, made up of the amount of the old certificate and interest and a further deposit of the difference, was issued. It was there said: "The mere fact that a portion of the $300 consisted of a certificate of deposit held against the same bank and the accrued interest thereon, which was surrendered at the time, did not make the transaction essentially different from what it would have been had the whole amount of $300 been deposited in cash, as recited in the certificate. The cash was present, or was supposed to be present, in the bank, and was considered and treated the same as though the cashier had actually passed it over to Glye and she had immediately re-deposited the same in the bank."

The rule established in this State as to the liability of a stockholder for regular deposits subject to check is, that withdrawals are charged against the funds first deposited. (*People* v. *Tallmadge,* 328 id. 210.) Under the holding in the *McCormick case, supra,* that the surrender of a certificate of deposit and the issuance of a new one is a new contract of deposit, no reason appears why the rule as to the application of payments affecting stockholders' liability, as announced in the *Tallmadge case,* should not be applied. So applied, Cramer's claim against the bank was on the last certificate of deposit, and only those stockholders who owned stock in the bank on the date of that certificate or thereafter could become liable thereon. In view of the holding in the *McCormick case* we consider the question closed in this State.

The decree of the circuit court and the judgment of the Appellate Court are reversed and the cause remanded to the circuit court, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*